[No. F029915. Fifth Dist. Sept. 13, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
KELLY DION PEÑA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 2 of DISCUSSION.

COUNSEL

Landra E. Rosenthal, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Shirley A. Nelson and Craig S. Meyers, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

THAXTER, J.—Health and Safety Code section 11550, subdivision (e) (section 11550(e)) imposes an additional penalty for anyone under the influence of specified controlled substances while in the "immediate personal possession" of a loaded, operable firearm. ██ At issue is whether the statute applies when the firearm was inside a pouch on the passenger side of an unlocked toolbox in the bed of the pickup truck appellant was driving. We conclude it does not and will reverse appellant's conviction for violation of section 11550(e). In all other respects the judgment will be affirmed.

FACTS

On September 1, 1997, about 10:00 a.m., Tulare Police Officer Brian Haney saw appellant Kelly Dion Peña, whom he knew to be unlicensed, driving a pickup truck with passenger Richele Reeder. Peña drove into a hotel parking lot; Haney pulled in behind him. Peña began walking away; Haney told him to return to the truck. Peña was nervous, fidgety and sweating profusely. Haney asked Peña if he had any weapons. Peña said he had a gun. Haney detained Peña and Reeder while he and another officer searched the truck.

A toolbox extended the width of the truck bed behind the cab. The box had two hinged lids, one on the driver side and one on the passenger side. The lid on the driver side was not locked; the lid on the passenger side had a lock through the hasp but the lock was not secured. Haney lifted the passenger side lid and saw the butt of a loaded, operable sawed-off .22-caliber rifle protruding from a pouch. A black fanny pack containing 2.5 grams of methamphetamine, syringes, a spoon and cotton was next to the rifle.

Peña said he and Reeder had used methamphetamine that morning. The drugs in the fanny pack were his; the syringes were not. When asked

whether the gun was his, he said, "I believe it is. I guess it's sort of mine." Peña was under the influence of methamphetamine. He had snorted the drug. He did not have injection sites on his body. Reeder also appeared to be under the influence of methamphetamine. She had injection sites on her arms.

According to Officer Haney, the rifle in the toolbox was not within arm's reach of the driver. The truck cab's back window did not open. Peña could "not readily" reach the weapon in the toolbox from the driver's seat. He probably could retrieve it without leaving the truck but he "would have to step all over [his] passenger." However, a person standing at the side of the truck could easily open the toolbox lid and remove the weapon with one hand.

*Defense*

Peña testified he met Reeder a few days earlier. He was helping her move her belongings that morning. He told Officer Haney the gun was "sort of" his because it was in his truck and because he did not want Reeder to get in more trouble. In fact, neither the gun nor the fanny pack belonged to him.

Reeder told a private investigator the gun and drugs in the truck were hers.

*Judgment*

The jury found Peña guilty of transportation of methamphetamine while personally armed with a firearm (Health & Saf. Code,[1] § 11379, subd. (a); Pen. Code, § 12022, subd. (c)), being under the influence with a firearm (§ 11550(e)), possession of a firearm by an ex-felon (Pen. Code, § 12021, subd. (a)(1)), possession of a short-barreled rifle (Pen. Code, § 12020, subd. (a)), being under the influence of methamphetamine (§ 11550, subd. (a)), and possession of an injection device (§ 11364).

The trial court sentenced Peña to a total term of seven years in state prison.

## DISCUSSION

1. *Peña was not in the "immediate personal possession" of a firearm within the meaning of section 11550(e).*

Section 11550(e) proscribes being under the influence of specified drugs "while in the immediate personal possession of a loaded, operable firearm."

---

[1]Statutory references are to the Health and Safety Code unless otherwise indicated.

It defines "immediate personal possession" as including, but not limited to, the interior passenger compartment of a motor vehicle. There is no case law interpreting the "immediate personal possession" language of the statute.

*Statutory Interpretation*

■ The objective of statutory interpretation is to ascertain and effectuate legislative intent. In determining intent, we look to the words of the statute and give them their usual and ordinary meaning. (*Kobzoff* v. *Los Angeles County Harbor/UCLA Medical Center* (1998) 19 Cal.4th 851, 861 [80 Cal.Rptr.2d 803, 968 P.2d 514].) The words are construed in context and harmonized to the extent possible with other statutes relating to the same subject matter. (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) A statute's legislative history and the wider historical circumstances of its enactment may be considered in ascertaining legislative intent. (*Ibid.*) ■ Generally, a penal statute must be construed in a manner most favorable to a defendant. (*People* v. *Perez* (1998) 68 Cal.App.4th 346, 357 [80 Cal.Rptr.2d 188].)

*Legislative Intent and History*

In 1989, the Legislature enacted Senate Bill No. 407, which amended section 11550 and added section 11370.1. (Stats. 1989, ch. 1041, §§ 1, 2, pp. 3609-3610.) Former section 11550, subdivision (c), now subdivision (e), created new penalties for persons under the influence of specified controlled substances while in the immediate personal possession of a loaded, operable firearm. Section 11370.1 created a new felony for unlawfully possessing certain quantities of controlled substances while in the immediate personal possession of a loaded, operable firearm. (*Review of Selected 1989 California Legislation* (1990) 21 Pacific L.J. 435-436.) The bill was introduced at the request of the San Diego County Sheriff to address " 'a current deficiency in California law. It is not broad enough, direct enough or tough enough to deter and stop the growing menace from a very deadly combination—illegal drugs and firearms.' " (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 407 (1989-1990 Reg. Sess.) as amended July 10, 1989, p. 2.) Proponents of the legislation noted that armed controlled substance abusers posed a threat to the public and to peace officers. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 407 (1989-1990 Reg. Sess.) June 14, 1989.) The bill was intended to protect those groups by deterring drug users from possessing operable firearms while under the influence. (Off. of Crim. Justice Planning, Enrolled Bill Rep. for Sen. Bill No. 407 (1989-1990 Reg. Sess.) Sept. 25, 1989.)

As originally proposed, the bill applied to mere possession of a firearm while under the influence. Some legislators voiced concerns about the scope

of such a provision. "To have a firearm under one's custody or control, as provided by this bill, includes the possession of any legal firearm which may be locked in one's closet at home while the would-be offender is at a party under the influence of cocaine . . . . Under this bill, a greater number of residential searches could be authorized. [¶] By combining the currently lawful act of possession of a firearm with the misdemeanor offense of being under the influence of a controlled substance . . . , this bill creates a felony with one of the state's most severe penalties." (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 407 (1989-1990 Reg. Sess.) as amended July 10, 1989, p. 3.) Subsequently, the "immediate personal possession" language was added. (Assem. Amend. to Sen. Bill No. 407 (1989-1990 Reg. Sess.) Aug. 21, 1989, p. 1.)

Communications between a drafter and the San Diego County Sheriff, who had requested the legislation, indicated that "immediate personal possession" meant "not in the trunk of the car." In urging Governor Deukmejian to sign the bill, its author stated: "This bill would create a new crime to be under the influence . . . of a street drug . . . while in the possession of any firearm that is loaded and operable. The firearm must be in the immediate personal possession of the accused *or* be possessed within the passenger compartment of a vehicle in which the accused is located." (Letter from Sen. Larry Stirling to Governor George Deukmejian (Sept. 14, 1989) italics added.)

Section 11550(e) was amended in 1990, but the "immediate personal possession" language was not changed. (Stats. 1990, ch. 1096, § 1, pp. 4572-4574.) By contrast, section 11370.1, which was enacted in the same act as section 11550(e), was amended in 1991 to replace the phrase "while in the immediate personal possession of" with "while armed with" a loaded, operable firearm. (Stats. 1991, ch. 469, § 1, p. 2280.) The amendment defined "armed" as "available for immediate defensive use." (Cal. Highway Patrol, Enrolled Bill Rep., Analysis of Assem. Bill No. 154 (1991-1992 Reg. Sess.) Sept. 18, 1991, p. 1; *Review of Selected 1991 Legislation* (1991) 23 Pacific L.J. 605.)

*The Words*

Although the three-word phrase at issue has not been interpreted, the individual words and their pairings have. ■ A defendant possesses a weapon when it is under his dominion and control. (See 2 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against Public Peace and Welfare, § 1003, p. 1135.) A defendant has actual possession when the weapon is in his immediate possession or control. He has constructive possession when the weapon, while not in his actual possession, is nonetheless under his

dominion and control, either directly or through others. (*People* v. *Wong Fun* (1940) 39 Cal.App.2d 211, 214 [102 P.2d 774]; *U.S.* v. *Covert* (6th Cir. 1997) 117 F.3d 940, 948.)

A defendant has "personal possession" of a firearm when he himself has the weapon. (*People* v. *Mendival* (1992) 2 Cal.App.4th 562, 574 [3 Cal.Rptr.2d 566].) "Personal possession" precludes the imposition of vicarious liability that may flow to a technically unarmed principal when another principal in the offense has a weapon. (*People* v. *Bland* (1995) 10 Cal.4th 991, 998, fn. 3 [43 Cal.Rptr.2d 77, 898 P.2d 391] (*Bland*).) It does not mean the weapon must be carried on the defendant's person. (*People* v. *Mendival*, *supra*, at p. 574; *People* v. *Superior Court* (*Pomilia*) (1991) 235 Cal.App.3d 1464, 1468-1471 [1 Cal.Rptr.2d 386].)

As used in section 11550(e), "immediate" has three potentially relevant meanings. It can mean quickly: the driver emerged from the truck and immediately grabbed the gun. It can mean nearby: the gun was kept in the driver's immediate vicinity. Or it can mean without any intervening agency or object: the presence of the gun was the immediate result of the driver's decision to protect himself. (Webster's New Internat. Dict. (3d ed. 1986) p. 1129.) Thus, under the ordinary meaning of "immediate," an individual is in the immediate personal possession of a firearm if the weapon is nearby and quickly and directly available to him.

Courts have defined "immediate" in the context of robbery. Property is taken from the "immediate presence" of the victim if it is so within the victim's reach, inspection, observation or control, that the victim could, if not overcome by violence or prevented by fear, retain his or her possession of it or at least an area within which the victim could reasonably be expected to exercise some physical control over his or her property. (*People* v. *Harris* (1994) 9 Cal.4th 407, 415 [37 Cal.Rptr.2d 200, 886 P.2d 1193] [35 to 80 feet and "around the corner of the same block" was from victim's immediate presence].) In the robbery context, immediate means within a certain distance.

Courts have also construed "immediate" in the context of searches incident to arrest. *Chimel* v. *California* (1969) 395 U.S. 752 [89 S.Ct. 2034, 23 L.Ed.2d 685] held that a warrantless search of an arrestee incident to a lawful custodial arrest extends to the area " 'within his immediate control,' " i.e., "the area from within which he might gain possession of a weapon or destructible evidence." (*Id.* at p. 763 [89 S.Ct. at p. 2040].) In *New York* v. *Belton* (1981) 453 U.S. 454, 460 [101 S.Ct. 2860, 2864, 69 L.Ed.2d 768], the court added a bright-line rule to apply when the suspect was arrested from a

vehicle. *Belton* held that the area of the arrestee's immediate control always included the passenger compartment of a vehicle and its containers. (*Id.* at p. 460 & fns. 3, 4 [101 S.Ct. at p. 2864].) The *Belton* rule effectively exchanged the *Chimel* actual grabbing area for a hypothetical grabbing area when the arrest involved a vehicle occupant. (*People* v. *Stoffle* (1991) 1 Cal.App.4th 1671, 1679 [3 Cal.Rptr.2d 257].) Thus, in the search incident to arrest context, immediate means directly or indirectly (inside a container) within reach.

*Related Statutes*

The provisions of the Dangerous Weapons' Control Law. (Pen. Code, § 12000 et seq.), like section 11550(e), penalize a variety of acts involving firearms. The weapon enhancement provisions apply to carrying (e.g., Pen. Code, § 12021.5); being "armed," "personally armed" and vicariously armed in the commission of a felony (e.g., Pen. Code, § 12022, subds. (a)(1), (c), (d)); and personal use in the commission of a felony (e.g., Pen. Code, §§ 12022, subd. (b)(1), 12022.5, subd. (a)(1)). The provisions were enacted " 'to deter persons from creating a potential for death or injury resulting from the very presence of a firearm at the scene of the crime.' " (*Bland, supra,* 10 Cal.4th at p. 996.)

In general, the terms "possession" and "armed" have been construed liberally. For example, in *Bland,* the Supreme Court applied the "armed with a firearm in the commission" of a felony enhancement (Pen. Code, § 12022) to possessory drug offenses. The court first noted that a defendant is "armed" when he has the weapon available for use, either offensively or defensively. (*Bland, supra,* 10 Cal.4th at p. 997.) A weapon that is available for use creates the danger it will be used. Thus, it is the availability—the ready access—of the weapon that constitutes arming. (*Ibid.*) The court then noted that a defendant is criminally liable for drug possession during the entire time he asserts dominion and control over the drug. Therefore, if he has a firearm available for use at any time during the drug possession to further that offense, he is " 'armed . . . in the commission . . . of a felony.' " (*Id.* at p. 1000.)

It was immaterial whether the defendant was present when the police seized the firearm together with the cache of drugs. If the firearm was kept near the drugs, the jury could reasonably infer that, at some point during the drug possession, the defendant was physically present with both the drugs and the weapon, giving him ready access to a firearm to aid his commission of the drug offense. (*Bland, supra,* 10 Cal.4th at pp. 1000, 1002-1003.) That

conclusion was consistent with the legislative purpose underlying the firearm penalty-enhancement provisions: to deter those engaged in felonies from creating a risk of death or injury by having a firearm at the scene of the crime. (*Bland, supra*, 10 Cal.4th at p. 1001.)

The United States Supreme Court's construction of the federal counterpart to California's weapon enhancement law (*Bland, supra*, 10 Cal.4th at p. 1002) is also instructive. The federal statute subjects a person who "uses or carries a firearm" "during and in relation to" a drug trafficking offense to a mandatory five-year prison term. (18 U.S.C. § 924(c)(1)(A)(i).) The statute was intended to combat the dangerous combination of drugs and guns; to persuade the criminal to leave his gun at home. (*Muscarello* v. *United States* (1998) 524 U.S. 125, 131-133 [118 S.Ct. 1911, 1916, 141 L.Ed.2d 111].) In *Muscarello*, a sharply divided court held that "carries a firearm" is not limited to firearms carried on the person. It also applied to conveying firearms in a vehicle, including in a locked glove compartment or the trunk of a car. (*Id.* at pp. 126-129 [118 S.Ct. at pp. 1913-1914].) In so holding, the court rejected the reasoning of *U.S.* v. *Foster* (9th Cir. 1998) 133 F.3d 704, 708, which Peña cites to support his arguments.[2] The court noted that requiring the gun to be immediately accessible was difficult to square with the statute's language. One carried a gun in the glove compartment whether or not it was locked. (*Muscarello* v. *United States, supra*, 524 U.S. at pp. 135-137 [118 S.Ct. at pp. 1918-1919].)

*Analysis*

Peña contends that "while in the immediate personal possession" has a considerably narrower focus than "armed" or "personally armed." The Legislature, by adding the element of immediacy to the elements of possession and personal possession, must have intended that the gun be not only readily available, as it would be if the charge were possession, but that it be immediately available—available without any intervening conduct. Thus, section 11550(e) requires that the defendant himself possess the firearm and that it be within reach or available for use without any intervening conduct. Because Peña could not reach the rifle without leaving the truck and walking to the passenger side of the toolbox, he was not in the immediate personal possession of a firearm within the meaning of section 11550(e).

---

[2] *U.S.* v. *Foster, supra*, 133 F.3d 704, held that the statute did not apply to a gun in a zipped bag under a snapped down tarp in the bed of a truck because that gun was not immediately available for use. The Supreme Court granted certiorari and vacated judgment (525 U.S. 801 [119 S.Ct. 32, 142 L.Ed.2d 24]); on remand the Ninth Circuit held the statute applied to the gun in the truck bed. (*U.S.* v. *Foster* (9th Cir. 1999) 165 F.3d 689.)

The People respond that under the express language of section 11550(e), if a drug-impaired driver had a gun under the rear seat of a minivan or a sports utility vehicle (SUV), the weapon would be in his "immediate personal possession." Yet that driver would have no "better access" to the firearm than Peña had. The Legislature must have intended that the gun need not be within arm's reach. Because the evidence showed Peña could grab the gun in a matter of seconds, he had "immediate personal possession" of a firearm within the meaning of section 11550(e).

The case presents a close call. The legislative intent underlying section 11550(e) is similar to the intent underlying other drug offense weapon enhancement statutes: to foster public safety and protect law enforcement officers by deterring drug users from possessing loaded, operable firearms while they are under the influence of street drugs. Deterrence is fostered by construing such statutes broadly. (Cf. *People* v. *Masbruch* (1996) 13 Cal.4th 1001, 1007 [55 Cal.Rptr.2d 760, 920 P.2d 705] [construing gun "use" broadly to foster deterrence].)

The legislative history, however, indicates the provision was not intended to penalize those who use drugs but keep their firearms in a locked closet at home or in the car trunk—i.e., not nearby or quickly and directly accessible—while they are under the influence. On the other hand, section 11550(e) expressly applies to the individual under the influence who has a loaded, operable firearm within the passenger compartment of the vehicle he or she occupies. The section applies in that situation regardless of whether the firearm is in a locked compartment or under the backseat of an SUV, i.e., out of reach or unavailable without some intervening act on the defendant's part.

The People's suggested broad construction of "immediate personal possession" to mean essentially "armed with" or in actual (as opposed to constructive) personal possession of the firearm is not unreasonable. So construed, "immediate personal possession" means readily available for offensive or defensive use. And, whether a weapon that is not within the passenger compartment of a vehicle is readily available to the inebriated or drug-impaired vehicle occupant is a question of fact.

The narrower construction urged by Peña, however, is also reasonable. There are logical reasons for the Legislature's restricting the statute's application when a defendant "under the influence" occupies the interior compartment of a motor vehicle. When a vehicle driver or occupant who is under the influence of a street drug has a loaded, operable firearm in the passenger

compartment of the car, the weapon is available for use by the inebriate, and the public is correspondingly at risk. (See *People* v. *Mendival, supra*, 2 Cal.App.4th at p. 573 [the threat presented by a firearm increases in direct proportion to its accessibility].) In addition, when a law enforcement officer stops that vehicle, the officer is at risk if the loaded, operable firearm is accessible to the occupants of the passenger compartment, regardless of whether it is on the driver's console or under the backseat of an SUV. If it is accessible, it can be retrieved and used against the officer before he or she has an opportunity to assess and secure the situation. On the other hand, if the firearm is outside the passenger compartment—in the trunk or in the bed of a pickup truck—the risk is usually considerably diminished or lessened.[3]

Moreover, vehicle occupants who are under the influence but who carry their loaded, operable firearms outside the passenger compartment are not free of criminal culpability. They can be prosecuted and punished under Penal Code section 12031, subdivision (a)(1) (carrying a loaded firearm in a vehicle on a public street or any public place).

Faced with two conflicting, reasonable constructions of the statutory language, we adhere to the policy of this state that the statute must be construed as favorably to the defendant as its language and the circumstances of its application reasonably permit. (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 896 [231 Cal.Rptr. 213, 726 P.2d 1288].) Accordingly, we hold that "immediate personal possession," as used in section 11550(e), when applied to a vehicle's occupant, requires that the firearm be within the passenger compartment. Here the rifle in the toolbox in the bed of the truck was not in the passenger compartment of the vehicle. Thus, there was insufficient evidence to support Peña's conviction under section 11550(e), and it must be reversed.

2. *Use of the revised CALJIC No. 2.90 did not deprive Peña of due process of law.* *

. . . . . . . . . . . . . . . . . . . . . . . .

---

[3]We recognize that there may be some unusual situations in which the defendant, although inside the passenger compartment, will have direct access to a firearm outside (e.g., if a pickup truck has a back sliding window through which the defendant can reach the firearm). If the Legislature intends those cases to fall within the statute's ambit, however, we think the proper method of doing so is through an amendment using clear-cut language rather than through our straining to interpret "immediate personal possession" as including all cases in which the defendant is inside, and the firearm outside, the passenger compartment.

*See footnote, *ante*, page 1078.

## DISPOSITION

The judgment of conviction as to count 2 is reversed, and the concurrent two-year term imposed on that count is vacated. In all other respects the judgment is affirmed. The superior court shall issue an amended abstract of judgment.

Ardaiz, P. J., and Buckley, J., concurred.

Respondent's petition for review by the Supreme Court was denied December 21, 1999. Kennard, J., was of the opinion that the petition should be granted.