Filed 7/2/15  P. v. Ramirez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061880 |
| v. | (Super.Ct.No. FVA1300207) |
| STEVEN RAMIREZ, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Gerard S. Brown, Judge.  Affirmed.

Patrick Morgan Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Karl T. Terp, Deputy Attorneys General, for Plaintiff and Respondent.

1

Following a bench trial, the court convicted defendant and appellant Steven Ramirez, Jr., of possession of a firearm by an ex-felon (Pen. Code, § 29800, subd. (a))[1] and also found true a gang enhancement pleaded under section 186.22, subdivision (b). He was sentenced to a total term of four years in state prison.

In this appeal, defendant argues that his waiver of his right to a jury trial was not voluntary and intelligent because he was incompetent at the time, or at least did not understand the ramifications of his waiver. He also challenges the sufficiency of the evidence to support his conviction for possession of the firearm in question. We affirm.

STATEMENT OF FACTS

Trial was held on August 5, 2014.

On January 30, 2013, two deputy sheriffs went to defendant's home to question him in connection with a pair of drive-by residential shootings in which he was believed to have been a victim. Defendant answered the door and allowed the deputies inside. They observed two persons sleeping in the living room, one on the floor and one on a couch. One was a known, self-admitted member of the Headhunters gang, and the other was believed to be an associate of that gang. The officers also observed a handgun on the armrest of the sofa, at the feet of the sleeper. When the officers entered, defendant was standing next to the couch with the weapon within arm's reach.

---

[1] All subsequent statutory references are to the Penal Code.

While it was not clearly established how many people resided in the house, the house and particularly the bedrooms were full of "piles of stuff."

A deputy with a gang assignment testified that defendant's residence had been the subject of two recent drive-by shootings. He testified that he had had encounters with several other members of the Headhunters gang at the residence, and that defendant was also a member of the gang.

This witness also testified that after a drive-by shooting targeting a gang member, it would be a typical response for other gang members to congregate to protect the house. The residence was located in territory claimed by the Headhunters and was "covered with graffiti."[2]

## SUFFICIENCY OF THE EVIDENCE

In resolving this claim, we view the evidence in the light most favorable to the judgment, including all reasonable inferences to be drawn from the evidence. We look for evidence which is reasonable, credible, and of solid value so that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (2015) 60 Cal.4th 966, 988.)

A defendant may be convicted of a possession charge if he has either physical or constructive possession of the contraband. (*People v. Williams* (2009) 170 Cal.App.4th 587, 625 [Fourth Dist., Div. Two].) More than one person can have legal possession of an item. (*People v. Miranda* (2011) 192 Cal.App.4th 398, 410.) Constructive possession

[2] In context, the word "gang" may be implied before "graffiti."

3

may be found when the defendant has dominion and control over the contraband. (*People v. Pena* (1999) 74 Cal.App.4th 1078, 1083-1084.)

In this case, the weapon was found in defendant's home, in conspicuous plain view. Hence, the element of scienter was established. At the time the deputies observed the weapon, defendant was standing right next to it. He had recently been the victim of multiple violent attacks, and there was credible, reasonable testimony that he and his fellow gang members would plan to defend the residence against further assaults. Although the weapon was not shown to have belonged to defendant (legally or otherwise), there is a reasonable inference to be drawn that he had the right and authority, as among his fellow gang members, to handle the weapon and use it if the need arose.

*People v. Sifuentes* (2011) 195 Cal.App.4th 1410 (*Sifuentes*), on which defendant relies, is readily distinguishable. In that case, two defendants were found in a motel room. Sifuentes was lying on one bed and his codefendant was kneeling next to the other bed. A handgun was found under the mattress of the second bed and the codefendant may have been trying to reach it. (*Id*. at pp. 1413-1414.)

Although there was " 'gang gun' " evidence in *Sifuentes, supra,* 195 Cal.App.4th at p. 1415, the appellate court found it insufficient to show that Sifuentes had the right to control *that* gun at *that* time. In our case, the weapon was not hidden in a personal space more obviously related to another person.[3] Furthermore, in *Sifuentes* peace officers

---

[3] Although someone was sleeping on the couch where the gun was found, it was at his feet, not his head, suggesting a lack of personal concern for the weapon.

entered a motel room to arrest Sifuentes on an outstanding warrant; he and the codefendant were found with two women in what might be called compromising positions. (*Id.* at p. 1414.) There was no showing that Sifuentes and his codefendant were engaged in any joint criminal activity at the time. Here, on the other hand, there was testimony supporting the inference that the other two men were at defendant's home to protect him and present a united front to any attackers. In this scenario joint possession of the handgun is highly plausible. We find sufficient evidence supports the conviction.

COMPETENCY ISSUES

On April 12 , 2013, defendant's attorney declared a doubt as to defendant's competency to stand trial. (§§ 1367 *ff.*) The first evaluation reflected the view that defendant was not competent to stand trial and needed psychotropic medications. However, a second evaluator found that defendant was competent to assist his attorney and appeared to be trying to "feign or exaggerate symptoms." Defendant's counsel submitted on the reports, and on July 24, 2013, criminal proceedings were reinstated.

However, after an unsuccessful *Marsden* motion (*People v. Marsden* (1970) 2 Cal.3d 118) in August 2013, on November 1, 2013, counsel again declared a doubt as to defendant's competency. He was eventually committed to a mental health care program including psychotropic medications, and on June 24, 2014, a report to the court indicated that he was restored to competency. On July 2, 2014, criminal proceedings were reinstated. As noted above, trial took place on August 5, 2014.

Defendant's claim of error is predicated upon his responses taken on the above date with respect to his willingness to waive a jury and submit to a bench trial. We set this out in full.

"MR. BROWN [defense counsel]: Yes. [¶] Mr. Ramirez, you and I have had previously discussed on several occasions [*sic*], and you understand that you have a right to a trial by a jury?

"THE DEFENDANT: I don't want a jury.

"MR. BROWN: But you understand that right?

"THE DEFENDANT: Yes.

"MR. BROWN: And you want to waive your right to have a trial by jury; is that correct?

"THE DEFENDANT: Yes. What does that mean—I don't need a jury.[4]

"THE COURT: You want to have a bench jury [*sic*]?

"MR. BROWN: Just the judge.

"THE DEFENDANT: Just the judge."

Defendant first suggests that the trial court should have explained in more detail just what a trial by jury is and entails. He concedes that this is not the law. (See *People v. Monk* (1961) 56 Cal.2d 288, 298.) Even if, as *Monk* suggested, it is better practice to

---

**4** Defendant presents the second half of this line as "I don't need a jury?" However, the reporter's transcript reflects a full stop, *not* a question mark, thus denoting an affirmative statement rather than a question. We must assume that the transcription accurately reflects defendant's intonation.

6

do so, failure to make a detailed advisal on the point is not error unless there is some reason to believe that the defendant does *not* understand what a jury trial is. (See *People v. Langdon* (1959) 52 Cal.2d 425, 432-433.)

Defendant then asserts that the trial court should have inquired into his mental state and possible confusion. He relies on the history of competency proceedings and the single response quoted above, "Yes. What does that mean—I don't need a jury" which he asserts reflected incomprehension or confusion.[5]

Once again we find defendant's cited cases unpersuasive. In *People v. Collins* (2001) 26 Cal.4th 297, 309 the flaw in the jury waiver was the fact that the trial court *affirmatively encouraged* the waiver by offering some unspecified future "benefit." The court found that any such inducement affected the voluntariness of the waiver. (*Ibid.*) In our case the record does not indicate that the court played any role in defendant's decision whatsoever.

---

[5] Defendant asserts broadly that the "record shows that when brought before the court for trial setting, appellant was confused, disoriented and unable to comprehend the nature of the proceedings." It does nothing of the sort. Defendant's pretrial comments have been set out in full above. After the court found him guilty, it had a few additional exchanges with defendant, which we also set out in full: "THE COURT: Mr. Ramirez, are you willing to waive the right to be sentenced in 20 court days and make it two days later on September 5th? Is that okay?" "DEFENDANT: Yes. I'll come back on the 5th." "DEFENDANT: Is that for final sentencing?" "THE COURT: That will be it, Friday the 5th." "DEFENDANT: Do you know what happens after that?" "THE COURT: That's the end of it. No more court proceedings." "DEFENDANT: Okay." "THE COURT: Probation is going to recommend a sentence to me, and they'll interview you as well." "DEFENDANT: So I might be on probation?" "THE COURT: We'll see. Let's see what they suggest. September 5th. Okay." "DEFENDANT: Yes."

7

Of course an incompetent defendant cannot validly waive his right to a jury trial. (See *People v. Smith* (2003) 110 Cal.App.4th 492, 500-502.) But we do not lightly second guess a trial court's decision whether or not to conduct competency proceedings. (*People v. Marks* (2003) 31 Cal.4th 197, 220.) Nothing in the record constitutes a "red flag" which triggered any obligation on the trial court's part.

That defendant, when asked if he wished to "waive your right to have a trial by jury" responded first "What does that mean" shows neither confusion *as to the nature of a trial by jury* nor incompetence. In context, defendant rather seems to have been uncertain of the meaning of "waive," as he *immediately* confirmed "I don't need a jury."[6]

We also stress that at the time of the waiver, defendant had been *found competent* and that counsel expressed no concerns whatsoever about defendant's ability to understand and participate.

---

[6] The exact transcription of one's extemporaneous remarks can bring a blush, or at least a grimace, to the face of even an experienced speaker. We note that in the same colloquy, the trial court inadvertently referred to a "bench jury." This error was caught and corrected by trial counsel, who responded "Just the judge." Defendant then confirmed his intent by repeating the latter statement. Thus, the trial court's slip of the tongue cannot have resulted in any confusion, especially as defendant had previously unequivocally stated that he did not want a jury.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST _____
J.

We concur:

RAMIREZ _____
P. J.

CODRINGTON _____
J.

9