Filed 3/24/25  P. v. Lowe CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085026 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FVI23001113) |
| CURTIS LOWE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Michael Dauber, Judge.  Affirmed in part, reversed in part and remanded for resentencing.

Garrick Byers, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

In April 2023, Curtis Lowe threatened to harm Troy H. Troy called law enforcement for help, and four San Bernardino Sheriff's Deputies responded. The deputies found Lowe and his girlfriend in a small bedroom they shared. Lowe was manifestly intoxicated. The room was littered with drugs and drug paraphernalia. Amongst the clutter, deputies found a 12-gauge shotgun shell cartridge on the floor right next to the narcotics and other contraband. They also found a loaded shotgun inside a black container right by the bedroom door.

A jury convicted Lowe of three offenses involving the possession of contraband. He contends (1) the trial court mis-described the element of " 'personal possession' " in its instruction to the jury on the offense of being under the influence of a controlled substance while in possession of a loaded, operable firearm; (2) his sentence, which consists of three consecutive terms, is unauthorized because it punishes a single act three ways; (3) the court abused its discretion when it selected and imposed the upper term for one of his convictions without proper consideration of his childhood trauma; and (4) the court erred when it failed to state its reasons for imposing consecutive sentences.

We agree with Lowe on one point. He is correct the trial court must stay one of his two sentences because they are both based on the single act of possessing a shotgun. We remand for resentencing to correct this error but otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

*The Prosecution's Case*

In late February or early March 2023, Troy met Lowe and his girlfriend, Erica C., through Lowe's sister. They were homeless, so Troy let them stay with him in his apartment in Adelanto. Troy had been homeless in New York City and he knew what it felt like. He wanted to give back to the community, and he had helped more than 20 other homeless people over the years. Lowe and Erica stayed in a small second bedroom. They kept the bedroom locked when they were not there.

Sometime in late March, at about 1:00 a.m., Troy woke up when he heard someone knock on the door to give Lowe a cigarette. Erica was not there. She had left earlier that day. Troy heard Lowe go to the door to get the cigarette. Troy sat up in bed because he "knew something wasn't right." He saw Lowe "just standing there" by the door to his bedroom. Troy asked Lowe if he was all right, and Lowe pointed a shotgun at him "with a blank look on his face." Troy said, "No, don't do this. Don't do this. . . . I got kids. You got kids, you know. I have grandkids. You have grandkids." Troy was scared; his "heart was beating" and he was crying.

Troy was able to run to where Lowe was standing and grab the barrel of the shotgun. He and Lowe began "wrestling" and "tussling with it." Lowe said, "You took everything from me," and Troy had no idea what he was talking about. Troy thought Lowe was going to shoot him. Troy "didn't want to get hurt" and he also didn't want to hurt anybody, so he ran outside to a nearby field. He was barefoot and wearing nothing but his underwear. Troy was later able to identify the shotgun when he testified at trial, because "there was no handle on it."

3

Lowe left the apartment that night and did not return for about a week. Troy eventually let Lowe and Erica stay at his apartment again. Troy forgave Lowe, and the two shook hands. Troy told Lowe to "respect [his] house."

At the beginning of April, shortly after Lowe moved back in, Lowe began giving Troy "intimidating" looks. Troy had been around violence all his life and "felt [his] life was in danger," so he left the apartment and called law enforcement for help.

A deputy sheriff arrived and spoke to Troy about 40 yards away from the apartment. Troy gave the deputy permission to enter the apartment and told him that Lowe probably had a shotgun. Sheriff's deputies knocked on the door to the second bedroom, and Lowe and his girlfriend came out.

The room was "very small" and "extremely cluttered." In plain view, deputies saw narcotics and paraphernalia "scattered throughout the room." They saw "crack pipes," a "bubbler," a rubber band that could be "used [as] a tourniquet" to aid in injecting drugs, "hypodermic needles," including one "loaded" with narcotics, and a small vial with narcotics in it as well.

Lowe appeared to be under the influence of a controlled substance, most likely methamphetamine. He was sweating and unable to maintain a conversation "without diverting off topic." He had dilated pupils, "rapid eyelid tremors," and a "white-coated tongue." Subsequent testing confirmed the presence of amphetamine and methamphetamine in his blood. A toxicologist opined he was under the influence of methamphetamine at that time.

Sheriff's deputies found a shotgun in a black, tube-shaped canister located right in front of the door to Lowe's room. The container was open at the top, making the shotgun easily accessible. The shotgun was loaded with

4

four live cartridges of 12-gauge buckshot.  Sheriff's deputies found a fifth shotgun shell cartridge on the ground right next to some of the narcotics and paraphernalia that were strewn about the room.  Troy identified the shotgun as the same one Lowe pointed at him the month before.  An expert tested the shotgun and determined it was functional.

The parties stipulated that Lowe had been convicted of a felony and was prohibited from possessing firearms and ammunition.

## II.

### *Charges, Conviction, and Sentence*

Lowe was charged with four offenses in the operative information: possession of a loaded, operable firearm while under the influence of methamphetamine (Health & Saf.[1] Code, § 11550, subd. (e); count 1); felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1); count 2); unlawful possession of ammunition (Pen. Code, § 30305, subd. (a)(1); count 3); and possession of a short-barreled shotgun (Pen. Code, § 33210; count 4).  It was alleged that Lowe had suffered a prior strike conviction (Pen. Code, §§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i)) and four aggravating circumstances were present (*id*., § 1170, subd. (b)(2)).

A jury convicted Lowe of possession of a loaded, operable firearm while under the influence of methamphetamine, of being a felon in possession of a firearm, and of unlawful possession of ammunition (counts 1, 2, and 3, respectively).  It acquitted him of possession of a short-barreled shotgun, count 4.  In a bifurcated proceeding, he admitted the prior strike conviction and the trial court found true three aggravating factors alleged in the information.

---

[1]     Undesignated code citations are to the Health and Safety Code.

At sentencing, the trial court sentenced Lowe to eight years and eight months in state prison.  The sentence consisted of three consecutive terms. On count 1, the court imposed a three-year upper term, doubled to six years pursuant to the Three Strikes law.  On count 2, the court imposed a term of 8 months doubled to one year, four months.  On count 3, the court imposed an identical term of 8 months doubled to one year four months.

DISCUSSION

I.

*The Trial Court Incorrectly Instructed the Jury on the Element of "Personal Possession" but the Error Was Harmless*

In count 1, Lowe was charged with possession of a loaded, operable firearm while under the influence of methamphetamine in violation of section 11550, subdivision (e)(1) (section 11550(e)(1)).  Section 11550(e)(1) provides that "a person who is unlawfully under the influence of cocaine, cocaine base, heroin, methamphetamine, or phencyclidine while in the immediate *personal possession* of a loaded, operable firearm is guilty of a public offense."  (Italics added.)  Lowe contends the trial court failed to correctly instruct the jury on the required element of "personal possession."  We agree the instruction given by the court incorrectly described this element, but conclude the error was harmless.  Our review is de novo.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1210.)

The trial court instructed the jury with a modified version of CALCRIM No. 2400.  The instruction told the jury they could convict Lowe if they found he possessed the shotgun either personally *or through another person*:

> "The defendant is charged in Count 1 with being under the influence of methamphetamine, a controlled substance, while in possession of a firearm.

"To prove that the defendant is guilty of this crime, the People must prove that:

"The defendant was willfully and unlawfully under the influence of methamphetamine, a controlled substance, when he was arrested; and

"The defendant was in possession of a loaded, operable firearm. [¶ . . . ¶]

"Two or more people may possess something at the same time.

"A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it, or the right to control it, either personally *or through another person.*" (Italics added.)

We agree the italicized aspect of the instruction was incorrect. Section 11550(e)(1) expressly requires "personal" possession to establish a violation. It contains no provision allowing for possession to be "through another person," whether vicariously, through an agency relationship, or otherwise. "A defendant has 'personal possession' of a firearm when he himself has the weapon." (*People v. Pena* (1999) 74 Cal.App.4th 1078, 1084 (*Pena*).) " 'Personal possession' precludes the imposition of vicarious liability that may flow to a technically unarmed principal when another principal in the offense has a weapon." (*Ibid.*) It was error for the trial court to provide the jury with an avenue for finding Lowe guilty if they did not conclude beyond a reasonable doubt he personally possessed the shotgun and thought he possessed it vicariously or otherwise through another person.

The People contend the instruction was correctly given, because it correctly states the general principles of constructive possession and those principles apply here. This argument is misplaced. Lowe's challenge to the instruction is that it incorrectly told the jury he could be convicted if he

7

possessed the shotgun *either* personally *or* through another person, when the statute penalizes personal possession only.  He did not challenge the instruction on the ground that it misstates the principles of constructive possession applicable to section 11550.

Nor was the issue forfeited.  "A trial court has a sua sponte duty to instruct on all of the elements of a charged offense."  (*People v. Jo* (2017) 15 Cal.App.5th 1128, 1160.)  Trial courts must comply with this duty even in the absence of a request by the defendant.  (*People v. St. Martin* (1970) 1 Cal.3d 524, 531.)  No objection, accordingly, was required to preserve the issue for review.[2]

---

[2]    We observe there are two additional potential errors with the trial court's instruction that were not identified or discussed by either party.  First, the instruction did not tell the jury the shotgun had to be in the "immediate" personal possession of Lowe.  The legislative history of section 11550 indicates the use of the word "immediate" in the statute was intended to circumscribe the reach of constructive possession principles, which ordinarily extend to contraband not in the immediate presence of the perpetrator.  (*Pena, supra,* 74 Cal.App.4th at pp. 1082–1083.)  For example, "the provision was not intended to penalize those who use drugs but keep their firearms in a locked closet at home or in the car trunk—i.e., not nearby or quickly and directly accessible—while they are under the influence."  (*Id.* at p. 1087.)  As such, with the omission of the word "immediate," the instruction appears to have incorrectly described constructive possession principles in a manner that is overbroad in the context of section 11550.

Second, the instruction failed to instruct the jury on the knowledge element of possession with respect to the first count.  For offenses that criminalize possession or custody of contraband, knowledge of the presence of the contraband is an essential required element.  (*People v. Snyder* (1982) 32 Cal.3d 590, 592.)

Lowe did not raise these potential errors here or below, so we are not required to address them.  We have nevertheless considered whether either error could potentially affect Lowe's substantial rights.  (Pen. Code, § 1237.)  We conclude any error would be harmless beyond a reasonable doubt for the same reasons we find the instructional error that was identified by Lowe to

8

We turn now to prejudice.  The error identified by Lowe is known as " 'alternative-theory error.' " (*People v. Aledamat* (2019) 8 Cal.5th 1, 7, fn. 3 (*Aledamat*).)  This is because the trial court's mis-description of the required element provided the jury with two theories of liability, one legally correct and the other legally incorrect.  The legally correct theory allowed the jury to find Lowe guilty if they found he personally possessed the shotgun.  The legally incorrect theory allowed the jury to find him guilty if he possessed the shotgun through another person.

The harmless error test that applies to this type of error is the *Chapman* standard for evaluating federal constitutional errors.  (*Chapman, supra*, 386 U.S. at p. 24; *People v. Harris* (1994) 9 Cal.4th 407, 424–425 [general rule re omitted and mis-described elements]; *Aledamat, supra,* 8 Cal.5th at p. 3 [specific rule re alternative-theory error].)  Under the *Chapman* standard, we "must reverse the conviction unless, after examining the entire cause, including the evidence, and considering all relevant circumstances, [we] determine[ ] the error was harmless beyond a reasonable doubt." (*Aleldamat,* at p. 13.)  Explained another way, we must determine whether it is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict absent the error. (*People v. Merritt* (2017) 2 Cal.5th 819, 831 (*Merritt*).)  In the case of alternative-theory error in particular, reversal is required unless we conclude beyond a reasonable doubt the jury based its verdict on a legally valid theory. (*Aledamat,* at p. 12.)

Applying these principles, we conclude the jury based its verdict on the legally valid theory that Lowe personally possessed the shotgun.  We come to this conclusion for two reasons.  First, the record does not "contain[ ] evidence

---

be harmless beyond a reasonable doubt.  (*Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).)

that could rationally lead to a contrary finding," i.e., that the verdict was based on an invalid theory. (*Neder v. United States* (1999) 527 U.S. 1, 19 (*Neder*).) To find Lowe guilty based on an invalid theory here, jurors would have had to conclude beyond a reasonable doubt that (1) Lowe did not possess the shotgun personally, and (2) he instead had control of it or the right to control it through another person. But here, while there was evidence Lowe may have had exclusive possession of the shotgun, and there was also evidence that Lowe and Erica may have had joint possession of the shotgun, there was no evidence at all to support a finding that Erica personally possessed the shotgun to the exclusion of Lowe and his possession of the shotgun was only through her.

The evidence the shotgun was possessed jointly or exclusively by Lowe included testimony by Troy that Lowe and Erica had exclusive access and control over the bedroom, and they kept it locked when they were out. According to sheriff's deputies, at the time of Lowe's arrest, Lowe and Erica were both in the small bedroom. The shotgun was in an unlocked container, it could be seen through a hole in the top of the container, and it was easily accessible to anyone in the room. In addition, according to Troy, Lowe pointed the very same shotgun at him a few weeks earlier. By contrast, there was no evidence at all that Erica was carrying the weapon on her person at the time of the arrest, that she was aware of the presence of the gun and Lowe was not, nor of other facts that could potentially support a conclusion that Lowe possessed the weapon vicariously or otherwise solely through her. We therefore conclude the record does not contain evidence that could rationally lead to a finding the verdict was based on an invalid theory. Indeed, the evidence of personal possession was overwhelming.

Second, our conclusion is buttressed by a concession made by Lowe's trial counsel. Counsel made an unusual argument to the jury during closing argument based on the requirements for drawing inferences and conclusions from circumstantial evidence. The argument relied on a principle underlying the reasonable doubt standard. The trial court, as required, instructed the jury on that principle as follows: "If you can draw two or more reasonable conclusions from [the] circumstantial evidence, and one of those points to innocence and one to guilt, you must accept the one that points [to] innocence."

Relying on this instruction, Lowe's trial counsel specifically conceded to the jury that it was reasonable to conclude the element of possession was satisfied by the evidence and that Lowe "possessed that firearm." However, counsel argued, the evidence also supported the contrary conclusion—that Lowe was not in possession of the shotgun—because there was evidence the gun was placed in his room without his knowledge. According to counsel's theory, Troy had the motive and opportunity to place the shotgun in Lowe's room because, by framing him, he could effectively arrange for police assistance in evicting him from the apartment. He argued, in light of the evidence Lowe was framed and not aware of the shotgun, the jury was required to accept the conclusion that pointed to innocence and acquit Lowe of the firearm possession counts. Counsel did not contest that all of the elements required to establish possession were met with the exception of the requirement that Lowe have knowledge of the presence of the shotgun.[3]

---

3    Specifically, counsel argued: "If you can draw two or more reasonable conclusions from circumstantial evidence, and one of those points to innocence and one to guilt, you must accept the one that points [to] innocence. [¶ . . . ¶] There is a reasonable conclusion that you can point to that he possessed that firearm —I'm sorry, [Mr. Lowe]. I have to be

11

One situation in which instructional error involving a required element of proof has been deemed harmless is when the defendant concedes or admits the element that that has been omitted or erroneously described. (*Merritt, supra,* 2 Cal.5th at p. 831.) A second way an error may be found harmless is by examining the jury's verdict to determine "what the jury necessarily did find" (*Aledamat, supra*, 8 Cal.5th at p. 15), and then asking whether it would be impossible on the evidence for the jury to make its findings i.e., " ' "to have found what the verdict *did* find without finding" ' " the jury relied on a legally correct theory (*id.* at pp. 12–15, quoting *People v. Chun* (2009) 45 Cal.4th 1172, 1204).

Here, based on trial counsel's argument and the jury's verdict on the second count, we are certain beyond a reasonable doubt the jury convicted Lowe based on the legal theory that he personally possessed the shotgun. This is because the trial court correctly instructed jurors on the required element of knowledge with respect to count 2, and the jury convicted Lowe on that count. The jury therefore necessarily found Lowe knew the gun was in the bag in his room, and necessarily rejected the defense theory that Troy framed Lowe by placing the shotgun in his room without his knowledge. Under this scenario, defense counsel expressly conceded it would be reasonable to conclude the element of possession was satisfied. The jury thus resolved the only contested issue on the question of possession in the prosecution's favor when it found, with respect to count 2, that Lowe was

---

reasonable. I'm asking them to be reasonable; right. There is a reasonable conclusion. [¶] [But] [t]he problem with the District Attorney's case is it's not the only reasonable conclusion that you can point to. [¶ . . . ¶] [O]ne of the essential elements of this crime is knowledge. Is it reasonable that somebody put that gun in that room and Mr. Lowe didn't know about it? . . . Isn't it reasonable he had no knowledge of that gun being in that room?"

12

aware of the shotgun's presence in his bedroom. "[W]here a reviewing court concludes beyond a reasonable doubt that [an] omitted [or misdescribed] element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." (*Neder*, *supra*, 527 U.S. at p. 17; *id.* at p. 10.)

We are thus persuaded beyond a reasonable doubt the jury convicted Lowe based on a legally valid theory. Nothing suggested Lowe possessed the shotgun through another person. And, based on the trial court's correct instruction on count 2, the jury affirmatively found he knew the shotgun was in the container in his bedroom under circumstances where Lowe conceded it would be reasonable to conclude the element of possession was satisfied. We affirm Lowe's conviction for possessing a loaded, operable firearm while under the influence of methamphetamine.

## II.

*Lowe's Sentence Is Unauthorized Because It Violates the Prohibition on Multiple Punishment of a Single Act*

Penal Code section 654 prohibits multiple punishment for a single act or an indivisible course of conduct. (Pen. Code, § 654; *People v. Hester* (2000) 22 Cal.4th 290, 294.) Lowe contends all three of his convictions arose from a single act and separate sentences for each conviction are therefore precluded by Penal Code section 654. He contends two of the sentences must be stayed. We conclude he is correct with respect to one of the sentences, but not both. Our review is de novo. (*People v. Washington* (2021) 61 Cal.App.5th 776, 795.)

Penal Code section 654 provides, in relevant part, "An act or omission that is punishable in different ways by different provisions of law may be

punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision. (Pen. Code, § 654, subd. (a).) "The statute does not prohibit multiple convictions for the same conduct, only multiple punishments." (*People v. Broadbent* (2020) 47 Cal.App.5th 917, 921.) In such cases, "the proper procedure is to stay execution of sentence on one of the offenses." (*People v. Monarrez* (1998) 66 Cal.App.4th 710, 713 (*Monarrez*).)

Lowe's first contention is that his convictions for possession of a loaded, operable firearm while under the influence of methamphetamine and possession of a firearm by a felon are both based on the single act of possessing the single shotgun found in his bedroom, and separate punishment with consecutive sentences was improper. We agree. The error is a straightforward one. Under *People v. Jones* (2012) 54 Cal.4th 350, 353, 357 (*Jones*), Lowe's possession of a single shotgun at the time of his arrest was a single actus reus that cannot be punished more than once. Punishment for one of Lowe's convictions for illegal possession of the shotgun must accordingly be stayed. (*Monarrez, supra,* 66 Cal.App.4th at p. 713.)

The Attorney General disagrees and contends the first and second counts are based on more than one act and more than a single intent. He argues, that "count 1 and count 2 involved different acts with separate intents," and "count 1 required the additional determination act of [Lowe] being under the influence of methamphetamine." Citing no authority, he contends separate sentences for counts 1 and 2 are proper because "[i]n count 1, the *significant act* was that [Lowe] was under the influence of methamphetamine, while the *significant act* in count 2 was the possession of the shotgun." (Italics added.)

14

The Attorney General's "significant act" test is based on principles that are no longer good law. The California Supreme Court overturned prior authority that countenanced the multiple punishment of a single act so long as it was undertaken in more than a single unlawful manner. (*Jones, supra,* 54 Cal.4th at pp. 353–358.) The Court specifically rejected the reasoning in prior cases that allowed courts to consider the unlawful subcomponents of a single physical act and punish them separately. (*Id.* at p. 356.) The fact Lowe was under the influence and the fact he was a felon while in possession of the shotgun are subcomponents of a single physical act. Multiple punishment is therefore prohibited. Our Supreme Court's holding on this point could not be more clear: "*we . . . hold that a single possession or carrying of a single firearm on a single occasion may be punished only once under* [*Penal Code*] *section 654.*" (*Id.* at p. 357, italics added.)

In contrast, we agree with the Attorney General that Lowe's second contention of multiple punishment error lacks merit. Lowe asserts that Penal Code section 654 prohibits multiple punishment for the possession of a firearm and the possession of ammunition when the firearm is loaded with the same ammunition in question. He contends there is no way to know whether the jury's verdict here was based on the ammunition found in the shotgun or the ammunition found in plain view on the bedroom floor. We are not persuaded.

As the Attorney General points out, Lowe's argument is factually unsupported. The prosecutor here specifically elected during closing argument to base the illegal possession of ammunition count on the ammunition found on the bedroom floor, not the ammunition found in the loaded gun. " '[S]imultaneous possession of different items of contraband,' " such as the ammunition and shotgun here, are separate acts for purposes of

15

Penal Code section 654 and, consequently, may be subject to separate punishment. (*Jones, supra,* 54 Cal.4th at p. 358.) The trial court accordingly did not err when it ran Lowe's sentence on the illegal ammunition possession count consecutive to the principal term.

In sum, we agree with Lowe in part. It was error to impose consecutive sentences on counts 1 and 2 when they were both based on the single act of possessing the shotgun, but it was not error to impose consecutive sentences on counts 1 and 3 based on his possession of the shotgun and the ammunition found on his bedroom's floor. We vacate the sentence and remand for resentencing.

Our remand for resentencing requires a full resentencing. (*People v. Buycks* (2018) 5 Cal.5th 857, 893–895.) At the resentencing hearing, the trial court will be empowered to revisit both its reasoning and ultimate sentencing choices including whether to impose the upper term and/or consecutive sentences. For this reason, we need not address Lowe's other contentions of sentencing error.

## DISPOSITION

Lowe's sentence is vacated and the matter is remanded for resentencing.  The judgment is affirmed in all other respects.


DO, J.

WE CONCUR:


DATO, Acting P. J.


CASTILLO, J.

17